IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PERLA KARINA TOVAR,

    Petitioner,

v.                                                                                          2:21-cv-00172-WJ-LF
                                                                                            2:19-cr-03992-WJ-LF-1

UNITED STATES OF AMERICA,

    Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on petitioner Perla Karina Tovar's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed February 25, 2021.  Doc. 1.  The United States filed a Response to Ms. Tovar's motion on September 10, 2021.  Doc. 5.  The Court gave Ms. Tovar the opportunity to file a reply but that order was returned as undeliverable.[1]  Docs. 8, 9.  A search through the Federal Bureau of Prisons indicates that Ms. Tovar was released on June 16, 2023.  *See* https://www.bop.gov/inmateloc/ (last visited on 7/13/2023).  Having read the motion and response, and reviewed the relevant law, I find that Ms. Tovar's motion is not well taken.  I recommend that the Court deny the motion without an evidentiary hearing and dismiss this case with prejudice.

**I.**    **Background Facts**

On June 25, 2019, before they encountered Ms. Tovar, Drug Enforcement Administration (DEA) agents seized 3.05 kilograms of what they believed to be cocaine in brick form from three

---

[1] Other mail sent to Ms. Tovar has also been returned undeliverable.  *See* Docs. 11, 12.

women during a bus interdiction operation. CR Doc. 41 at 3.² These three women cooperated with the DEA, and they arranged with their source of supply to deliver the drugs to associates of the supplier in a "reverse operation." *Id*. Those associates were sisters and co-defendants Adriana Mendoza and petitioner Perla Karina Tovar. *Id*.

On June 28, 2019, an undercover agent ("UCA") contacted Ms. Mendoza and told her he was ready to meet with her to deliver the drugs. *Id.* Ms. Mendoza and the UCA agreed to meet at a Walmart in Las Cruces, New Mexico. *Id.* When Ms. Mendoza arrived at the Walmart, she was in the passenger seat, and her sister, Ms. Tovar, was driving. *Id.* Another female and two children got out of the car and went into the Walmart, but Ms. Mendoza and Ms. Tovar remained in the vehicle. *Id.* Soon the UCA arrived in a different vehicle. *Id.* Ms. Mendoza got out of the car Ms. Tovar was driving and got into the rear passenger seat of the UCA's car. *Id.* After a few minutes, the UCA and Ms. Mendoza got out of the UCA's car and went to the back to open the trunk. *Id.* at 4. The UCA showed Ms. Mendoza the six "bricks" that DEA agents had made to look like the drugs that they had seized a few days earlier from the three women on the bus. *Id.* The bricks were in a backpack, which Ms. Mendoza took, and she then returned to the passenger seat of the car that Ms. Tovar was driving. *Id.* At that point, law enforcement agents activated their lights and moved in to make an arrest. *See it.* When Ms. Tovar saw what was happening, she drove away, hitting an unmarked law enforcement vehicle in the process. *Id.* As they drove away, Ms. Mendoza threw the backpack containing the bricks out the window. *Id.* Ms. Tovar and Ms. Mendoza eventually were taken into custody. *Id.* Ms. Tovar informed the DEA agents that she was instructed by a person in prison in Ciudad Juarez, Mexico, to meet with a man (the

---

² Citations to "CR Doc.__" refers to documents filed in case number 2:19-cr-03992-WJ-LF-1, the criminal docket for Ms. Tovar's criminal case. Citations to "Doc. __" refer to documents filed in case number 2:21-cv-00172-WJ-LF, the civil docket for Ms. Tovar's motion.

UCA) and obtain drugs from him. *Id.* She admitted that she knew she was picking up drugs, but she said she did not know what kind of drugs they were. *Id.* Laboratory results indicated that the seized narcotics were heroin hydrochloride in powder form with a net weight of 3.05 kilograms, or 3,005 grams. *Id*.

On July 1, 2019, before the lab results were received,[3] Ms. Tovar and Ms. Mendoza were charged in a criminal complaint with conspiracy to possess with intent to distribute approximately 3.55 kilograms[4] of cocaine, in violation of 21 U.S.C. § 846. *See* CR Doc. 1 at 1. Before an indictment was returned, Ms. Tovar and Ms. Mendoza agreed to plead guilty to an information. On November 4, 2019, Ms. Tovar and Ms. Mendoza pled guilty to an information that charged them with conspiracy to distribute a controlled substance as defined in 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), in violation of 21 U.S.C. § 846. *See* CR Docs. 32, 36, 40. Ms. Tovar pled guilty pursuant to a Rule 11(c)(1)(C)[5] plea agreement, which provided for a sentence of 70 to 87 months in prison. CR Doc. 35 at 4. Ms. Tovar was represented by Meghan McLoughlin. *See id*. at 8.

In the plea agreement, Ms. Tovar affirmed that she had read and understood the terms of the agreement, that she had discussed her case and constitutional rights with her attorney prior to

---

[3] The presentence report states that the lab results were received after July 19, 2019. CR Doc. 41 at 4.

[4] This weight including the packaging materials; the net weight was 3005 grams. *See* Doc. 5 at 7; Doc. 5-1.

[5] "Rule 11(c)(1)(C)" refers to Federal Rule of Criminal Procedure 11(c)(1)(C), which provides for the government and the defendant's attorney to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)."

entering into the agreement, and that she understood the constitutional rights she was giving up by pleading guilty. *Id*. at 8. Ms. Tovar's counsel signed the plea agreement after stating that:

> I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of the elements of the offense, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into the agreement is an informed and voluntary one.

*Id*. In her admission of facts, Ms. Tovar stated:

> In a series of phone calls that took place on June 28, 2019, my co-defendant and I arranged at the direction of an individual in Mexico to receive illegal drugs from another individual that, unbeknownst to me, was a law enforcement agent. Upon receiving the illegal drugs, the individual in Mexico directed my co-defendant and me to keep the drugs for two or three days until he provided us with further directions about what to do next. The illegal drugs that my co-defendant and I agreed to receive was a quantity of heroin weighting 3,005 grams.

*Id.* at 4.

At Ms. Tovar's plea hearing on November 4, 2019, Magistrate Judge Gregory B. Wormuth questioned Ms. Tovar regarding her understanding of the plea agreement. CR Doc. 72. Ms. Tovar testified, under the penalty of perjury, that no one was forcing her or threatening her to plead guilty. *Id*. at 7–8. She testified that she had read the plea agreement before she signed it, she had fully discussed it with her attorney, and that she understood the terms of the plea agreement. *Id*. at 11–12. The attorney for the United States recited the evidence against Ms. Tovar and Ms. Mendoza, including that the "[i]llegal drugs that the Defendants agreed to receive was a quantity of heroin weighing 3,005 grams." Doc. 72 at 17. Ms. Tovar testified that the facts that the prosecutor had stated were true. *Id*. at 18. Judge Wormuth found that Ms. Tovar was competent and capable of entering an informed plea, that she was aware of the nature of the charge against her and the consequences of pleading guilty, and that her plea was knowing and

voluntary and supported by sufficient facts. *Id*. He accepted Mr. Tovar's guilty plea but deferred acceptance of the plea agreement to the district judge. *Id*.

In calculating Ms. Tovar's Guidelines, the probation officer used the quantity of heroin involved to determine Ms. Tovar's base offense level. *See* CR Doc. 41 at 5. The probation officer determined that Ms. Tovar's total offense level was 27, and her criminal history category was I, which resulted in a guideline sentencing range of 70 to 87 months in prison. *Id.* at 6, 13. On February 20, 2020, Judge Johnson accepted Ms. Tovar's 11(c)(1)(C) plea agreement and imposed a 70-month sentence to be followed by 4 years of supervised release. CR Docs. 48, 51. The Court entered its judgment on February 25, 2020, and entered an amended judgment on March 10, 2020. *See* CR Docs. 49, 51.

Ms. Tovar timely filed her motion to vacate, set aside or correct sentence on February 25, 2021. Doc. 1. In her motion, Ms. Tovar contends that her attorney was ineffective for failing to object "to the fact that they changed the drugs on the indictment. Originally it was Cocaine. They changed it to Heroin. I never had anything to do with Heroin . . . ." *Id.* at 4. She asserts that this changed the guidelines substantially. *Id*. She further argues that her attorney was ineffective for not objecting to her presentence report based on either the drug weight or the kind of drugs. *Id*. Ms. Tovar also contends that her counsel was ineffective because she failed to negotiate her "Rule 11(c)(1)(C) to sentence me under the guidelines." *Id*. at 5.

I. **Legal Standard**

    A. <u>28 U.S.C. § 2255</u>

Under 28 U.S.C. § 2255(a),

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral

attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts,

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . . If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). To show that he or she is entitled to relief, the petitioner must allege facts that, if proven, would warrant relief from his or her conviction or sentence. *See Hatch v. Okla.*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001). An evidentiary hearing is not necessary where a § 2255 motion contains factual allegations that are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact. *Id.* at 1472 (stating that "the allegations must be specific and particularized, not general or conclusory"); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

     B.  Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must show (i) that his or her attorney's performance was deficient and (ii) that the deficiency caused him or her prejudice, meaning that there is a reasonable probability that the result would have been different but for his or her lawyer's unprofessional errors. *See United States v. Cruz*, 774 F.3d 1278, 1284–85 (10th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Osborn v. Shillinger*, 997

F.2d 1324, 1328 (10th Cir. 1993). The first prong can be met if the petitioner establishes that his or her counsel performed below the level expected from a reasonably competent attorney in criminal cases. *Strickland*, 466 U.S. at 687–88. To meet *Strickland's* second prong, petitioner must show that counsel's deficient performance prejudiced him or her to the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In the context of a defendant who pleaded guilty, the prejudice prong is modified slightly to focus on whether the constitutionally ineffective performance affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). Accordingly, the habeas petitioner who pleaded guilty must show "that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

A court presumes that counsel was effective, and "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Chronic*, 466 U.S. 648, 658 (1984). Further, a court may address the performance and prejudice prongs in any order and need not address both if it concludes that the defendant failed to satisfy one of the two prongs. *See Strickland*, 466 U.S. at 700; *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).

## II. Discussion

Ms. Tovar first contends that her attorney was ineffective for not objecting to the fact that she was initially charged with conspiring to distribute cocaine and later was charged with conspiracy to distribute heroin, which substantially changed her guideline range. Doc. 1 at 4. Ms. Tovar also complains that her attorney "made no objection in my PSR (presentence report)

7

or my drug weight or the kind of drugs." *Id*.  Ms. Tovar, however, does not meet her burden to show that her counsel's performance was deficient or that she was prejudiced in any way.

First, Ms. Tovar offers no evidence that the lab report was wrong, or that the drugs were not heroin and did not weigh 3005 grams.  She was well aware at her change of plea hearing that she was being charged with conspiracy to possess 3005 grams of heroin, and she stated under penalty of perjury that the illegal drugs she and her sister "agreed to receive was a quantity of heroin weighing 3,005 grams." *See* Doc. 72 at 17–18.  Given that the facts in the presentence report were true, there was no basis for her attorney to object to the drug weight or the kind of drugs in that report.  Further, Ms. Tovar cites no authority—and the Court could not find any authority—to support the proposition that the United States is prohibited from charging a defendant with the correct drug and weight after discovering that the initial complaint incorrectly identified the drug.  Ms. Tovar therefore cannot show that her attorney's performance was deficient for not objecting to the change in the charge, and for not objecting to the presentence report's correct statement that Ms. Tovar had agreed to receive 3005 grams of heroin.

Second, Ms. Tovar's counsel successfully negotiated a plea deal that was beneficial to Ms. Tovar—a plea deal that subjected her to a lower minimum mandatory sentence than she would have faced had she been charged with the full weight of the heroin.  The Information filed against Mr. Tovar did not state what type of drugs she had conspired to distribute.  *See* CR Doc. 32.  The Information stated that Ms. Tovar, along with Ms. Mendoza

> unlawfully, knowingly and intentionally combined, conspired, confederated, agreed, and acted interdependently with each other and with other person whose names are known and unknown to the Government to commit an offense defined in 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), specifically, distribution of a controlled substance.

8

*Id.*  After she was arrested, Ms. Tovar told DEA agents that she knew she was picking up drugs but did not know what kind.  CR Doc. 41 at 4.  DEA agents originally thought the substance was cocaine, but laboratory tests revealed that the substance actually was heroin.  *See* Doc. 5 at 6.  The penalties attached to cocaine and heroin differ depending on the amount of the drug possessed.  A person convicted of a violation involving at least 1 kilogram of heroin or 5 kilograms of cocaine—an "A-Level" offense—faces a minimum mandatory term of imprisonment of ten years.  *See* 21 U.S.C. § 841(b)(1)(A).  On the other hand, a person convicted of a violation involving 100 grams (or 0.1 kilogram) or more of heroin or 500 grams or more of cocaine—a "B-Level" offence—faces a minimum mandatory term of imprisonment of five years.  *See* 21 U.S.C. § 841(b)(1)(B).

In this case, Ms. Tovar agreed to receive 3.05 kilograms, or 3005 grams, of a drug that turned out to be heroin, an A-Level offense; she therefore was facing a minimum mandatory sentence of ten years.  Her attorney, however, was able to negotiate a plea agreement that allowed her to plead guilty to conspiracy to distribute more than 100 grams of heroin, a "B–level" offense, which carries a minimum mandatory sentence of only five years.  In other words, Ms. Tovar's attorney negotiated a plea agreement that contained the same terms that Ms. Tovar would have faced had she agreed to receive 3005 grams of cocaine, as the DEA agents initially believed.  As the government points out, "[i]n practical terms, [the plea] agreement resulted in [Ms. Tovar] being exposed to only a potential 5-year mandatory minimum, as opposed to the potential 10-year mandatory minimum she could have faced has she been charged under an A-level Information or Indictment."  Doc. 5 at 7.  Accordingly, counsel negotiated a plea that was favorable to Ms. Tovar.  Based on these facts, Ms. Tovar cannot prove that she would have rejected the plea deal and insisted on going to trial had her counsel's performance been different.

Had she insisted on going to trial, the government could have charged her with and A-Level offense. If she was convicted, Judge Johnson would have been required to sentence her to at least ten years in prison. Ms. Tovar cannot show that she was prejudiced by her attorney's purported deficient performance.

Further, whether Ms. Tovar was aware that she had agreed to receive heroin is of no consequence under § 841. Section 841 provides that

> it shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .

The Supreme Court has identified two ways in which § 841(a)(1)'s knowledge requirement can be satisfied: (1) "by showing that the defendant knew he [or she] possessed a substance listed on the [federal drug] schedules, even if he [or she] did not know which substance it was" or (2) "by showing that the defendant knew the identity of the substance he possessed," even if he or she did not know it was listed. *McFadden v. United States*, 576 U.S. 186, 192 (2015).

Here, Ms. Tovar admitted that she knew she was picking up a controlled substance, but she did not know the type of controlled substance. CR Doc. 41 at 4. That neither she nor the DEA agents knew it was heroin when she drove to the Walmart to pick up the drugs does not make any difference to the charge under § 841; all the government was required to prove was that Ms. Tovar knowingly agreed to possess a controlled substance. The fact that Ms. Tovar's counsel did not object when the charge was changed from cocaine to heroin would not have made a difference given that the drugs in fact were heroin.

Ms. Tovar also argues that her attorney was ineffective for not negotiating a plea agreement for a sentence below the guideline range. While it is true that Ms. Tovar's counsel did not negotiate a plea agreement for a sentence below the guideline range, she still negotiated a

10

favorable sentence under the circumstances.  Ms. Tovar's counsel negotiated an agreement that required Judge Johnson to sentence her within a range of 70 to 87 months, which was well below the minimum mandatory sentence of 120 months if the government had charged her with an A-Level offense in an indictment.  Further, the government represented that it would not have sought authorization to agree to a below-guideline sentence in this case.  Doc. 5 at 8.  Ms. Tovar's counsel did ask the  government to agree to the low-end range of 70 months as a sentence given Ms. Tovar's minimal criminal history and background, Doc. 5-2, which the government agreed to do, Doc. 5 at 9.  Ultimately, Judge Johnson imposed a low-end 70-month sentence.  CR Doc. 51.  As discussed above, Ms. Tovar was facing a minimum mandatory sentence of ten years for the amount of heroin involved in this case.  Because of the efforts of her attorney and the plea agreement she negotiated, Ms. Tovar was sentenced to just over five years.  Consequently, Ms. Tovar cannot establish that her attorney's performance was deficient.

Further, assuming that Ms. Tovar could establish that her attorney's performance was deficient, she cannot establish prejudice.

> The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 52.  The court is to "look to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial." *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001).

In this case, the circumstances surrounding the plea do not demonstrate that Ms. Tovar would have opted to proceeded to trial.  Ms. Tovar does not challenge her guilt.  She is not claiming that but for her attorney's failure to negotiate a better plea she would have insisted on

going to trial.  Instead, Ms. Tovar simply claims that her attorney should have gotten her a better plea deal.  This is insufficient to establish the prejudice prong under *Strickland*.  *See Hill*, 474 U.S. at 60 (Petitioner did not allege that had his counsel correctly informed him of his eligibility for parole he would not have pled guilty and instead would have insisted on going to trial; petitioner therefore "failed to allege the kind of 'prejudice' necessary to satisfy the second half of the *Strickland v. Washington* test.").

Finally, a petitioner in a § 2255 case does not have a right to an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  Because I find that the record in this case conclusively shows that Ms. Tovar is not entitled to relief, there is no need for an evidentiary hearing.

### III. Conclusion

For the reasons stated above, I find that Ms. Tovar failed to establish that her attorney's performance was deficient and failed to establish that any alleged deficiency caused her any prejudice.  I also find that Ms. Tovar does not have a right to an evidentiary hearing.  I therefore recommend that the Court dismiss Ms. Tovar's petition with prejudice.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. *Id*.  In other words, if no objections are filed, no appellate review will be allowed.

_____
Laura Fashing
United States Magistrate Judge